**NOT FOR PUBLICATION**  **CLOSED**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GLORY LICENSING LLC, | : | Civil No. 09-4252 (FSH) |
| Plaintiff, | : | |
| | : | **OPINION & ORDER** |
| v. | : | |
| TOYS "R" US, INC., | : | Date: May 16, 2011 |
| Defendant. | : | |

**HOCHBERG, District Judge:**

This matter comes before the Court on Defendant Toys "R" Us, Inc.'s Motion to Dismiss the Second Amended Complaint pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6).  The Court has reviewed the parties' submissions pursuant to Federal Rule of Civil Procedure 78 and held oral argument on the motion on April 25, 2011.

### BACKGROUND

Plaintiff Glory Licensing LLC brings this action alleging three counts of patent infringement.  Glory is the owner of U.S. Patent Nos. 7,570,383 (the "'383 Patent"), 7,619,768 (the "'768 Patent"), and 7,672,007 (the "'007 Patent") (collectively, the "Glory Patents").[1]

---

[1] The Glory Patents are part of a large family of patents.  They share the same specification with and are continuations of three patents issued to Eon-Net, L.P.: U.S. Patent. Nos. 6,683,697; 7,075,673; and 7,184,162.

Those patents are at issue in Eon-Net, L.P. v. Flagstar Bancorp, Inc., a case filed in the Western District of Washington.  There, the district court imposed Rule 11 sanctions on Eon-Net's counsel – who also represents Glory in the instant action – finding that "Eon-Net's claims of infringement were baseless, and that the suit was filed for the improper purpose of inducing a

The Glory Patents protect a system for processing information from a template file to an application program using "content instructions" and "customizable transmission format instructions" on a programmed computer.

Glory alleges that the Toys "R" Us ("TRU") website – which allows customers to input information into a template as part of the purchase process – infringes the Glory Patents.

## DISCUSSION

To survive a motion to dismiss pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

I.   THE VALIDITY OF THE GLORY PATENTS

Section 101, Title 35 provides that "[w]hoever invents or discovers any new and useful

---

cheap settlement to avoid litigation expense." Eon-Net, L.P. v. Flagstar Bancorp, Inc., (C05-2129) (RSM), Order on Motion for Fees and Costs at 21 (W.D.Wash. Jan. 4, 2010). The court also found Eon-Net's argument that "little pre-filing investigation [of the merits of particular claims] is necessary because virtually all web-based commerce, and particularly all websites using HTML technology, infringe[] the Eon-Net patents" to be "objectively unreasonable." Eon-Net, L.P. v. Flagstar Bancorp, Inc., (C05-2129) (RSM), 2010 WL 2026756, at *7 (W.D.Wash. May 17, 2010). This ruling, along with the Washington court's rulings on claim construction, is currently on appeal.

While the Washington court's holding in Eon-Net does not weigh on this Court's analysis of TRU's motion, this Court is cognizant that the arguments Glory advances on appeal would seem to suggest that any website offering an online shopping experience would infringe the Glory Patents. See e.g., April 25, 2011 Tr. at 41:24-42:13. Additionally, Glory's counsel noted at oral argument that his clients have settled six or seven dozen cases alleging infringement of the three Glory Patents. Id. at 37:12-37:21.

process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.

The Supreme Court has outlined "three specific exceptions to § 101's broad patent-eligibility principles: laws of nature, physical phenomena, and abstract ideas." In re Bilski, 130 S. Ct. 3218, 3225 (2010) (internal quotations omitted).

"Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law." In re Bilski, 545 F.3d 943, 951 (Fed. Cir. 2008).

Here, Defendant argues that the Glory Patents are invalid because they claim abstract ideas.

### A.  The Machine or Transformation Test

Courts have frequently relied on the "machine or transformation test," to determine whether a method claim is patentable under § 101.[2] Under this test, a process is patentable only if "'(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing.'" In re Bilski, 130 S. Ct. at 3225-26 (quoting Diamond v. Diehr, 450 U.S. 175, 182 (1981)).

The Supreme Court has cautioned that this "is not the sole test for deciding whether an invention is a patent-eligible 'process,'" though it "is a useful and important clue, an investigative tool" for making that determination. In re Bilski, 130 S. Ct. at 3226.

---

[2] While the asserted claims here are not just method claims but also system and computer readable media claims, Glory does not contest that all of the claims are essentially process claims and thus the "machine or transformation test," as limited by Bilski, is the correct analysis to apply..

3

      1.      The Machine or Apparatus Prong

In determining whether a process is tied to a particular machine or apparatus, the U.S. Patent and Trademark Office has counseled that among the relevant factors to be considered are "the degree to which the machine in the claim can be specifically identified (not any and all machines)" and:

> the extent to which (or how) the machine or apparatus imposes meaningful limits on the execution of the claimed method steps. Use of a machine or apparatus that contributes only nominally or insignificantly to the execution of the claimed method (e.g., in a data gathering step or in a field-of-use limitation) would weigh against eligibility).

<u>Interim Guidance for Determining Subject Matter Eligibility for Process Claims in View of *Bilski v. Kappos*</u>, 75 Fed. Reg. 43,922, 43,925 (July 27, 2010).

Glory claims that the patents at issue are tied to a particular machine or apparatus insofar as the claims make reference to a "first computer system, on which the content instructions and customizable transmission format instructions are programmed and operate."[3]

The case law is clear that simply the use of a programmed computer is not sufficient to satisfy the machine or apparatus prong of the test.

In <u>Ex Parte Halligan</u>, Appeal No. 2008-1588, 2008 WL 4998541 (B.P.A.I. Nov. 24, 2008), the Board of Patent Appeals and Interferences applied the "machine or transformation test" to claims "in which each of the process steps is performed by the programmed computer. The issue presented by these claims is whether recitation of a programmed computer suffices to tie the process claims to a particular machine." <u>Id.</u> at *13.

The Board concluded that when claims "recite a method performed on a programmed

---

[3] (Opp. Br. 7)

computer...[t]his recitation fails to impose any meaningful limits on the claim's scope as it adds nothing more than a general purpose computer that has been programmed in an unspecified manner to implement the functional steps recited in the claims.....Such a field-of-use limitation is insufficient to render an otherwise ineligible process claim patent eligible." Id.; see also Ex Parte Langemyr, Appeal. No. 2008-1495, 2008 Pat App. LEXIS 13, at *29 (B.P.A.I. May 28, 2008) ("The only recitation of structure is in the nominal recitation in the preamble citing a 'method executed in a computer apparatus.' This recitation is so generic as to encompass any computing system, such that anyone who performed this method in practice would fall within the scope of these claims....We will not allow such a nominal recitation in the preamble to convert an otherwise ineligible claim into an eligible one.").

    Glory declares these cases "inapposite," but has utterly failed to set forth any basis upon which to distinguish the cases. Nor does Glory cite a single case in which a programmed computer like the one referenced in the Glory Patents is found to satisfy the machine prong of the "machine or transformation test." In failing to provide legal authority for its position, Glory has essentially ceded the point that the machine prong is not satisfied by its patents. Glory certainly cannot later claim support in cases not brought to the attention of this Court.

    At oral argument, Glory relied on Ex Parte Wasynczuk, Appeal. No. 2008-1496, 2008 Pat App. LEXIS 14 (B.P.A.I. June 2, 2008).[4] There, the Board of Patent Appeals and Interferences considered the validity of claims in a patent relating "to simulation systems using a distributed computer network, wherein subsystems can be simulated independently, the subsystem simulations communicating the values of input/output variables to simulate subsystem

---

[4] See April 25, 2011 Tr. 27:25-29:20.

interaction." Id. at *1.

Glory appears to rely on the section of the Board's decision where certain claims were deemed valid because "the first simulating step is performed on 'a first physical computing device' and the second simulating step is performed on 'a second physical computing device'" and the "claim is directed to a particular machine implementation of the mathematical algorithm that does not encompass every substantial practical application of an abstract idea." Id. at *27.

As to that claim, the Board found that the combination of the two devices and the implementation of a particular algorithm was sufficiently specific to constitute a machine. By contrast, in considering several other claims at issue in Wasynczuk, the Board found invalidity based on abstractness because "the sole structural limitation recited is the 'computer-implemented system'" and "the computer or processor is essentially any conventional apparatus that performs the claimed functions." Id. at *31-32.

The Glory Patents mirror the second set of claims discussed in Wasynczuk, not the first. The "first computer system" upon which Glory relies refers to any conventional computer programmed to perform the claimed functions and nothing in the claim language provides more specific limitations.

Glory's only attempt to point to something more specific in the patent language is its reliance on the use of the terms "content instructions" and "customizable transmission format instructions."[5] The patent contains no information that defines these generic terms or sheds any

---

[5] For example, Claim One of the '383 Patent reads as follows:

A method of processing information on a first computer system comprising at least one computer, which comprises:

light on what the instructions entail, nor who programs them according to what specifications. Despite being given several opportunities at oral argument, counsel for Glory failed to articulate what about these general terms alters the computer at issue in the Glory Patents such that it is no longer a general, all purpose computer.[6]

Accordingly, the Glory Patents cannot be said to be tied to a particular machine or apparatus and thus do not satisfy the machine prong of the "machine or transformation test."

### 2. The Transformation Prong

"A claimed process is patent-eligible if it transforms an article into a different state or thing. This transformation must be central to the purpose of the claimed process." In re Bilski, 545 F.3d 943, 962 (Fed. Cir. 2008).

---

a. receiving a file by transmission from another computer system external to said first computer system and automatically displaying said file on a computer display as a template;

b. automatically selecting and extracting information from said file according to content instructions;

c. providing utilities capable of automatically routing the extracted information as input information to an unrestricted diversity of application programs according to customizable transmission format instructions tailored to enable correct processing of the input information by any application program that requires said input information;

d. transmitting said input information to each application program requiring said input information; and

e. automatically processing said input information by said each application program.

(Cmplt., Ex. 1)

[6] See April 25, 2011 Tr. 32:3-36:25.

"Purported transformations or manipulations simply of public or private legal obligations or relationships, business risks, or other such abstractions cannot meet the test because they are not physical objects or substances, [and they are not representative of physical objects or substances." Id. at 963.

The Glory Patents claim processes involving the extraction of information entered into and stored in a document or file and the formatting and transmission of that information to an application program.

In Ultramercial v. Hulu, No. 09-06918 (RGK), 2010 WL 3360098 (C.D.Cal., Aug. 13, 2010), the court considered a method by which a "media product accessed by the consumer is downloaded to a memory of a personal computer of the consumer." Id. at *5. The court held that "the mere transfer of data from one memory disk on one computer to another memory space in a second computer is not 'transformation of article' under § 101....[T]he nature of the computer memory does not vary based on what is stored in it." Id.

Similarly, the relevant claims in the Glory Patents address a "mere transfer" of data from an electronic or hard copy document to an application program. Glory cannot claim that the data itself is transformed or even changes at all.

Glory relies on the Federal Circuit's statement in Bilski that the transformation of "raw data into a particular visual depiction of a physical object on a display was sufficient to render that more narrowly-claimed process patent-eligible." 545 F.3d at 963. But the data at issue in the Glory Patents does not change forms – it is merely transferred from one format – a document or file – to another – the application program. The data itself remains the same. As a result, a

8

transformation cannot be said to have taken place as a result of the patented process.[7]

### B. The Machine or Transformation Test After *Bilski*

Glory argues that even if its patents are found not to satisfy the requirements of the machine or transformation test, this Court must deny TRU's motion to dismiss.

The entire sum of Glory's briefing on this issue, quoted in its entirety, is as follows:

> [A]s the Supreme Court held that "the machine-or-transformation test is not the sole test for deciding whether an invention is a patent-eligible 'process'" under 35 U.S.C. § 101, see Bilski, 130 S.Ct. at 3227, Glory's complaint cannot be dismissed even if this Court were to find that the Glory Patents did not satisfy the machine-or-transformation test.

(Opp. Br. 9-10)

Merely acknowledging that Bilski was decided does not constitute a legal argument in opposition to TRU's motion. In its brief opposing the motion, Glory failed to make any argument of any kind about what other factors this Court should consider in determining whether the Glory Patents address an abstract idea and neglected to include any citation to a single legal authority in support of its position.[8] In so doing, Glory has waived any argument that this Court

---

[7] At oral argument, Glory also referenced Cybersource Corporation v. Retail Decisions, Inc., 620 F. Supp. 2d 1068 (N.D. Cal. 2009). Counsel for Glory, however, did not discuss the holding of the case, which supports TRU's position on this motion. In Cybersource, the court assessed a patented "fraud verification process" involving the manipulation of "credit card numbers by using them to construct and utilize a 'map of credit card numbers.'" Id. at 1073. The Cybersource court concluded that the patent did not involve a transformation because "manipulations of abstractions do not meet the transformation prong" and "[s]imply collecting data into a vague sort of 'map ' does not amount to a 'transformation.'" Id. at 1073-74.

[8] In a letter filed after the completion of briefing on TRU's motion and at oral argument, Glory cited to Research Corporation Technologies v. Microsoft Corp., 627 F.3d 859 (Fed. Cir. 2010). Notably, Glory did not cite to this legal authority for the proposition that this Court should consider any particular factors beyond the machine or transformation test in assessing TRU's motion.

should consider factors beyond the machine or transformation test.[9]

---

Moreover, the Federal Circuit's holding in Research Corporation Technologies does not support Glory's position. In that case, the Federal Circuit found "nothing abstract in the subject matter of the processes claimed" by the patent at issue, which presented "functional and palpable applications in the field of computer technology." Id. at 868-69. Glory claims that this holding indicates that the Glory Patents – which "pertain to computer technology having specific application to Internet-based commerce, in particular, ordering and purchasing goods" – are not abstract. (February 3, 2011 Zimmerman Ltr. at 1-2) To suggest that the patents at issue in Research Corporation Technologies are sufficiently analogous to the Glory Patents to draw this conclusion is absurd. The patents in Research Corporation Technologies:

> address a need in the art for a method of and apparatus for the halftone rendering of gray scale images in which a digital data processor is utilized in a simple and precise manner to accomplish the halftone rendering. The fact that some claims in the '310 and '228 patents require a high contrast film, a film printer, a memory, and printer and display devices also confirm this court's holding that the invention is not abstract.

Id. (internal quotations omitted). The claims involved, then, are far more specific and concrete than those at issue in the instant action. While the Federal Circuit noted that "inventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent Act," that standard is simply not met by the Glory Patents. Id.

[9] Even if Glory had advanced such an argument, the merits of the issue favor dismissal of this action based on a finding of patent invalidity. The Supreme Court noted in Bilski that the machine or transformation test was not dispositive as to patent abstractness, but it did not articulate what other factors should be weighed on such an assessment; since Bilski, courts have looked to whether the patent imposes meaningful claim limitations. See e.g., Ultramercial, 2010 WL 3360098, at *7.

In Ultramercial, the court considered the validity of a patent "the basic idea [of which was] that one can use advertisement as an exchange or currency. An Internet user can pay for copyrighted media by sitting through a sponsored message instead of paying money to download the media." 2010 WL 3360098, at *6. The Ultramercial court held that this principle is an abstract idea, noting that "public television channels have used the same basic idea for years to provide free (or offset the cost of) media to their viewers." Id. The court went on to explain that:

> the added features, examples, or limitations of the '545 patent do not make it patentable. That the exchange (advertisement for media) is carried over the Internet, through a facilitator, using passwords and activity logs, does not limit the patent in a meaningful way. The patent still discloses an abstract idea garnished

**CONCLUSION**

Because the Glory Patents are addressed to abstract ideas, they are invalid pursuant to 35 U.S.C. § 101 and the line of cases culminating in Bilski.  Accordingly, this infringement action must be dismissed for failure to state a claim.

**THEREFORE IT IS** on this 16th day of May, 2011,

**ORDERED** that Defendant's Motion to Dismiss is **GRANTED**.

The Clerk of the Court is directed to terminate the motion (Docket No. 38) and to close the case.

/s/ Faith S. Hochberg
**Hon. Faith S. Hochberg, U.S.D.J.**

---

with accessories. If the claimed invention here were patentable, it would preempt use of this [method] in all fields.

Ultramercial, 2010 WL 3360098, at *6 (internal quotations omitted).

Similarly, the Glory Patents are addressed to the basic idea that information can be extracted from a document and adapted to fill an application format.  Nothing in the Patents imposes meaningful limitations on this core abstract idea.

Counsel for Glory made zero effort to articulate how the patent imposes meaningful claim limitations that this Court should consider in addition to the "machine or transformation" analysis.  Counsel clearly knew that Bilski invited him to make such arguments and analysis, and he did not do so.  Likely, if counsel could think of any such arguments, he would have made them.